**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-02505-PAB-CBS

CASEY BERNARD RODRIGUEZ,
    Plaintiff,
v.

WILEY,
DR. ALLRED,
DR. NAFZINGER,
HSA BAUER,
HSA SMITH (ASST),
G. RAMIREZ,
UNIT MNGR. COLLINS,
NURSE GLADBACH, and
LT. JANSON,
    Defendants.

**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Magistrate Judge Craig B. Shaffer

    THIS MATTER comes before the court on *pro se* Plaintiff Rodriguez' Motion for Preliminary Injunction (doc. # 30), dated March 24, 2009. Defendants filed their Response in Opposition to Plaintiff's Motion for Injunctive Relief (doc. # 46) on March 27, 2009, and the Plaintiff replied (doc. # 49) on May 8, 2009. Plaintiff filed his Supplement to Injunction and Motion of Notice of Errors and Request for Sanctions/Corrections (doc. #62) on June 22, 2009. The court permitted Defendants to file a Response to Plaintiff's Supplemental Submission in Support of Plaintiff's Motion for Injunctive Relief (doc. #67) on July 2, 2009. This court heard oral arguments on June 24, 2009. With an Order of Reference dated December 26, 2008, this matter was referred to the Magistrate Judge to, *inter alia,* "[c]onduct hearings, including

evidentiary hearings, and submit proposed findings of fact and recommendations for rulings on dispositive motions." The court has carefully considered the arguments presented in the parties' briefs and during oral arguments, as well as the applicable law. For the following reasons, I recommend that Plaintiff's request for preliminary injunctive relief be denied.

## FACTUAL BACKGROUND

Plaintiff Casey Rodriguez ("Mr. Rodriguez") has been an inmate in federal custody since July of 1996. At some point between the date he was sentenced and mid-2003 Mr. Rodriguez contracted hepatitis C. In 2006, Plaintiff was transferred from Marion, Illinois to the United States Administrative Maximum Penitentiary ("ADX") in Florence, Colorado. Plaintiff has a mandatory release date of December 31, 2009, and may qualify for early release on September 3, 2009.

In his underlying action, filed November 19, 2008, Mr. Rodriguez primarily claims that Defendants acted with extreme indifference to a serious medical need by refusing to provide Plaintiff with antiviral medication to treat his hepatitis C infection. Also included in the Plaintiff's Complaint are claims that Defendants exhibited extreme indifference to his medical need for prescription eyeware and the general health, safety and sanitation of ADX. Mr. Rodriguez also challenges the constitutionality of the conditions of his confinement and the Federal Bureau of Prisons' ("BOP") disciplinary procedures. The pending motion for preliminary injunctive relief demands immediate antiviral treatment.

According to the BOP's Clinical Practice Guidelines (which were submitted by both parties with their briefs on the instant motion), hepatitis is an infectious disease affecting the liver. There are five known hepatitis viruses: A, B, C, D, and E. Each type is transmitted in a

different way and has a different effect on the human body. Hepatitis C is spread by blood-to-blood contact and is often asymptomatic. However, chronic infection can result in scarring of the liver (fibrosis), and progress to advanced scarring (cirrhosis) after many years. In some cases, patients with cirrhosis will go on to experience liver failure or other complications including liver cancer. A hepatitis C infection can be treated in a number of different ways, though antiviral drug therapy with a mixture of interferon plus ribavirin is the most commonly used form of treatment and is considered to be most effective. Doctors have identified six genotypes of the hepatitis C virus, each of which responds differently to antiviral treatment. Genotypes 2, 3, 5 and 6 have a far greater response rate to interferon plus ribavirin therapy than genotypes 1 and 4. *See* BOP Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis (Oct. 2005) at 20-39 (attached as Exhibit 1 to Plaintiff's Supplemental Documents to Preliminary Injunction (doc. #62) and as Exhibit A2 to Defendants' Response to Plaintiff's Supplemental Submission in Support of Plaintiffs' Motion for Injunctive Relief (doc. # 67)). The medical staff at ADX has identified Plaintiff's particular strain of hepatitis as genotype 2.

The parties disagree as to the treatment and medical care Plaintiff has received for his condition while at ADX. From the exhibits submitted by the parties, it appears that Plaintiff's condition has been monitored on a relatively routine basis during his tenure at both the Marion and Florence facilities. Plaintiff's test results are positive for certain abnormalities that are indicative of hepatitis C infection, but a liver biopsy performed on June 13, 2003 was negative for liver fibrosis. Defendants maintain that Plaintiff is not immediately at risk for any serious liver damage. Prison officials submitted a request for hepatitis antiviral treatment for Mr.

Rodriguez via interferon plus ribavirin in March of 2008.  However, the BOP's Medical Director, evaluating the available materials concerning Mr. Rodriguez' condition, disapproved the request based upon the fact that the time remaining on Plaintiff's sentence is shorter than the time required to administer the requested treatment.  *See* HepCDenialletter.wpd (attached as Exhibit 2 to Plaintiff's Response and Objection to Defendants' Motion to Dismiss (doc. # 40)). Mr. Rodriguez filed a number of appeals with the BOP requesting that his medical records be reevaluated and treatment administered.  All of these appeals were denied.  Defendants claim that Mr. Rodriguez has been uncooperative with the medical staff since his arrival.  Plaintiff claims that he has never refused treatment or care and that his medical needs have been neglected by the BOP and its staff.  Believing he had no other recourse to receive treatment for his condition, Plaintiff filed suit.

## ANALYSIS

A preliminary injunction is among the most "extraordinary" and drastic remedies that a court can award.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 973 (10th Cir. 2004).  *See also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).  "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  *Schrier v. University Of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005).  Therefore, before a preliminary injunction may be entered pursuant to Fed.R.Civ.P. 65, the moving party must satisfy all four of the following requirements: (1) the movant will suffer irreparable injury unless the injunction is issued; (2) there is a substantial likelihood of success on the merits; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the

opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). The moving party bears the burden of persuasion as to each of these elements. *Heideman*, 348 F.3d at 1189.

Though all forms of injunctive relief are considered extraordinary, courts have identified three categories of preliminary injunctions that are "disfavored:" (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that he could recover at the conclusion of the full trial on the merits. *O Centro*, 389 F.3d at 973. According to the Tenth Circuit, if a movant seeks a preliminary injunction that falls into one of these disfavored categories, that "movant must satisfy a heightened burden," and his allegations "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary in even the normal course." *Id.*

Plaintiff is seeking an order requiring Defendants to immediately provide him with antiviral treatment that he is not currently receiving. Therefore, if granted, Plaintiff's injunction would require Defendants to alter the status quo through the performance of a positive act. *See Schrier*, 427 F.3d at 1259 (holding that an injunction is mandatory if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction). Further, granting the preliminary injunction would award Mr. Rodriguez with nearly the same relief he would receive upon succeeding in a full trial on the merits. The injunction sought therefore qualifies as a disfavored remedy, and the court must

apply a higher degree of scrutiny in considering the merits of Plaintiff's request.

For his motion to succeed, Mr. Rodriguez must first demonstrate that he will suffer irreparable harm if the injunction is not issued. To constitute irreparable harm, "an injury must be certain, great, actual and not theoretical." *Heideman*, 348 F.3d at 1189 (*citing Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir. 1985)) (internal quotation marks omitted). "[T]he party seeking injunctive relief must [also] show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* Injury that is merely speculative in nature does not constitute irreparable harm sufficient to warrant granting a preliminary injunction. *Heideman*, 348 F.3d at 1189. Therefore, to satisfy this requirement, a plaintiff "must do more than merely allege imminent harm; he must demonstrate it." *Clark v. Schriro*, 2007 WL 2750667 at *2 (D. Ariz. 2007). *Cf. Heideman,* 348 F.3d at 1189 ("[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. (quoting *Wisconsin Gas Co.,* 758 F.2d at 674)).

In an attempt to demonstrate immediate and irreparable harm, Mr. Rodriguez notes that he has hepatitis C, which is a dangerous and potentially deadly disease. *See McKenna v. Wright,* 2002 WL 338375 at *6 (S.D.N.Y. 2002) (finding that, at its advanced stages, hepatitis qualifies as a sufficiently serious medical condition under the Eighth Amendment). From these undisputed facts, Plaintiff contends that his condition places him at risk for developing serious liver damage and that the longer treatment is withheld the less likely it is to be effective.

However, Plaintiff's argument is both speculative in nature and contrary to the medical evidence supplied by the parties. According to the BOP Clinical Practice Guidelines, "only 10-

15% of persons with chronic HCV infection develop progressive fibrosis of the liver leading to cirrhosis." *See* BOP Clinical Practice Guidelines at 26-27.  The earliest and best indicators of cirrhosis are a "decreased platelet count, an increase in the [patient's] AST/ALT ratio, and a prolonged prothrombin time." *See* BOP Clinical Practice Guidelines at 29.  According to Mr. Rodriguez' attending physician, Dr. Allred, Plaintiff's ALT and AST levels are elevated but stable, his platelet counts have not dropped below normal levels, and his prothrombin time (1.0) is well within the normal range.  *See* Second Declaration of Doctor David K. Allred at 4 (attached as Exhibit A1 to Defendants' Response to Plaintiff's Supplemental Submission in Support of Plaintiffs' Motion for Injunctive Relief (doc. # 67)).  Further, the best indication of whether antiviral therapy is appropriate is the presence of moderate to severe fibrosis as identified in a liver biopsy.  *See* BOP Clinical Practice Guidelines at 27.  A liver biopsy performed on June 13, 2003 indicated that Mr. Rodriguez' liver was free of any signs of fibrosis at that time.  According to the BOP, it is "highly likely that [Mr. Rodriguez] has not progressed (and may never progress) to the point of requiring treatment."  *See* Declaration of Ben Brieschke in Support of Defendants' Motion to Dismiss at 11 (attached as Exhibit A to Defendants' Motion to Dismiss (doc. # 24))  All of the above evidence has led Dr. Allred to conclude that Mr. Rodriguez is not presently at risk for developing liver cirrhosis, and therefore interferon plus ribavirin therapy is not appropriate at this time.  *See* Second Declaration of Dr. Allred at 5.

Plaintiff has offered no contradicting evidence.  Rather, he points out he has genotype 2 hepatitis, which the BOP Guidelines indicate is highly responsive to treatment.  However, the efficacy of treatment does not equate to necessity for the purposes of relief under Rule 65.  The fact that Plaintiff *can* receive the antiviral treatment does not indicate that he *must.*  While there

is little question that hepatitis C is a "sufficiently serious" condition under the Eighth Amendment, merely becoming infected with hepatitis C does not ensure that serious and irreparable damage will occur. *McKenna,* 2002 WL 338375 at *6. On the record presently before the court, I conclude that Mr. Rodriguez has not met his burden and therefore cannot justify the extraordinary relief he seeks.

Plaintiff must also demonstrate that he has a "clear or substantial likelihood of succeeding on the merits of his action." *McKenna,* 2002 WL 338375 at *5. In the instant case, Plaintiff has brought a *Bivens* action alleging that the federal prison where he is housed and its officials have violated the Fifth and Eighth Amendments by denying him medical treatment for his hepatitis C infection and related complications. In order to succeed with such a claim, Mr. Rodriguez must prove that Defendants were "deliberate[ly] indifferen[t]" to his "serious medical needs." *Green v. Federal Bureau of Prisons,* 2009 WL 150650 at *3-4 (D.Colo.).

To satisfy the standard of deliberate indifference a doctor must act with "deliberate indifference to serious medical needs of prisoners." *Farmer v. Brennan,* 511 U.S. 825, 837 (1970). This means that Mr. Rodriguez must show that his prison doctors "[knew] of and disregard[ed] an excessive risk" to Plaintiff's "health or safety." *Id.* As previously discussed, Dr. Allred has come to the medical conclusion that, based upon Plaintiff's test results, Mr. Rodriguez does not require interferon plus ribavirin therapy at this time. Mr. Rodriguez may disagree with this conclusion, but case law firmly establishes that prisoners do not have the right to receive any and all medical treatments that they choose. *Estelle v. Gamble* 429 U.S. 97, 106 (1976). Therefore, at this time it is not at all clear that Plaintiff can show that Defendants acted with deliberate indifference in the instant case, since a mere disagreement between an inmate

and his doctor over the proper course of treatment "does not create a constitutional claim." *McKenna,* 2002 WL 338375 at *7 (*quoting Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Plaintiff has thus failed to demonstrate that his underlying case has a clear or substantial likelihood of success on the merits.[1]

Furthermore, the court is wary of issuing equitable relief in a situation where the injunction cannot be enforced or where application of the injunction is "highly uncertain." *Licata & Co. Inc. v. Goldberg*, 812 F. Supp. 403, 410 (S.D.N.Y. 1993). The court is also disinclined to issue an injunction that would require ongoing judicial supervision to assure the nonmovant is abiding by the injunction. *Schrier*, 427 F.3d at 1259. According to the BOP Guidelines, the suggested interferon plus ribavirin treatment period for a patient with genotype 2 hepatitis C is between 12-24 weeks. Following the completion of the treatment regimen the patient should be routinely monitored for a period of up to two years. *See* BOP Clinical Practice Guidelines at 34. If treatment with interferon plus ribavirin is interrupted, or if a patient is not properly monitored after the treatment ends, the patient's health may be placed at serious risk. *See* BOP Clinical Practice Guidelines at 26. Considering that Mr. Rodriguez currently has a mandatory release date of December 31, 2009, and may be eligible for a pre-release program as early as September 3, 2009, it is not at all certain that Plaintiff will be able to complete the suggested treatment during his remaining time at ADX.

Based upon the record presented, I find that Plaintiff has failed to sustain his burden with regard to the first two elements necessary for the issuance of a preliminary injunction, especially

---

[1] To be successful in a motion for preliminary injunction, the moving party must satisfy all four of the previously identified elements. Because Plaintiff has failed to satisfy elements one or two, the court is not required to, nor will it, discuss the merits of the two remaining elements

when taking into account the heightened scrutiny required when considering a disfavored remedy.

Accordingly, for the foregoing reasons, I recommend that Mr. Rodriguez' Motion for Preliminary Injunction (doc. # 30) be DENIED.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be

both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 14th day of August, 2009.

BY THE COURT:

  s/Craig B. Shaffer
United States Magistrate Judge