IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02505-PAB-CBS

CASEY BERNARD RODRIGUEZ,
      Plaintiff,
v.

WILEY,
DR.ALLRED,
DR. NAFZIGER,
HSA BAUER,
HSA SMITH (ASST),
G. RAMIREZ,
UNIT MANAGER COLLINS,
NURSE GLADBACH, and
LT. JANSON,
      Defendants.

---

## RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Magistrate Judge Shaffer

As the number of prisoner lawsuits filed in federal courts continues to grow, two

characteristics have become apparent.  *Pro se* plaintiffs invariably sue multiple defendants on the

apparent assumption that "more is always better than less," notwithstanding the constraints of

applicable law.  A defendant may be added to the litigation based on little more than incidental

contacts with the plaintiff or bare assumptions about that defendant's knowledge or conduct.

These pleading practices invariably increase the chances that a meritorious claim is lost in a

morass of frivolous contentions.  Defendants respond by filing sweeping motions to dismiss that

simply recycle language from past briefs or invoke in rote fashion legal doctrines untethered to

any factual context or pragmatic assessment of case management.  In the end, a trial court must

1

parse through pleadings and briefs, endeavoring to separate the wheat from the chaff.  This case illustrates the problem.

Pending before the court is Defendants Ron Wiley, Dr. David Allred, Dr. Steven Nafziger, Mike Smith, Giovanni Ramirez, Mark Collins, Nona Gladbach and Sean Janson's Motion to Dismiss Plaintiff's Amended Complaint (doc. # 75), filed on August 12, 2009.  *Pro se* Plaintiff Casey B. Rodriguez filed his Objection to Defendants' Motion to Dismiss Amended Complaint (doc. # 98) on December 8, 2009.  Defendants filed a Reply in Support of Their Motion to Dismiss (doc. # 99) on December 22, 2009.  By Order of Reference to United States Magistrate Judge (doc. # 7), dated December 16, 2008, this matter was referred to this court, *inter alia*, to "submit proposed findings of fact and recommendations for rulings on dispositive motions."  The court has carefully considered the motion and relating briefs submitted by the parties, the entire court file and the applicable case law.  I have concluded that the court's consideration of the pending motion would not benefit from oral argument.[1]  For the following reasons, I recommend that Defendants' motion be granted in part and denied in part.

## FACTUAL BACKGROUND

Mr. Rodriguez initiated this litigation on or about November 19, 2008 with the filing of his original Complaint (doc. # 3).  At the time this action commenced, Mr. Rodriguez was an inmate in the custody of the Federal Bureau of Prisons (BOP) at the United States Penitentiary, Administrative Maximum (ADX), in Florence, Colorado.[2]  The original Complaint asserted

---

[1]  *See* D.C.COLO.LCivR. 7.1H ("[a] motion may be decided on the papers unless oral argument, at the court's discretion, is ordered').

[2]At some point in late 2009, Plaintiff Rodriguez was transferred to the Federal Correctional Institution (Victorville Medium I) in Adelanto, California.  More recently, Plaintiff

2

claims against Ron Wiley, Nona Gladbach, Giovanni Ramirez, Mark Collins. Director [FNU] Nalley, Director [FNU] Lappin, Dr. John Doe, Medical Director John Doe, Associate Warden J. Jones, Harrell Watts, and the Federal Bureau of Prisons.  Plaintiff asserted claims for "deliberate indifference to serious medical needs" under the Eighth and Fourteenth Amendments, "deliberate indifference to serious health and safety," "unauthorized disciplinary sanctions" in violation of the Fifth and Fourteenth Amendments, "denial of access to administrative relief leading to cruel and unusual punishment," and "conspiracy to violate civil rights."

Plaintiff Rodriguez filed his Amended Complaint (doc. # 58) on June 1, 2009, basing subject matter jurisdiction on 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 28 U.S.C. § 1346, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671, *et seq.*  The Amended Complaint names Defendants Wiley, Allred, Nafziger, Bauer, Smith, Ramirez, Collins, Gladbach and Janson, and asserts five claims for relief.  In describing the "nature of the case," Plaintiff claims that he "suffers from hepatitis C, long term with pain and continuing liver damage evidenced by elevated liver enzymes."  Mr. Rodriguez generally contends that it

> took 2 ½ years [for him] to see a doctor for serious medical needs. Took over 1 yr to receive glasses while complaining of headaches.  Paperwork for treatment of hep C was purposely delayed until too little time was left on sentence and treatment was denied for such.  Conditions of confinement are unconstitutionally filthy and identical to an illegal control unit.

As before, the Amended Complaint seeks "declaratory, injunctive, compensatory and punitive relief on all claims in the amount of $100.00 per defendant per violation per day."  During a status conference on June 16, 2009, this court stayed all discovery pending rulings on any

_____

was relocated to the Federal Correctional Institution in Dublin, California.

motions to dismiss (doc. # 60).

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that they have absolute and/or qualified immunity, and that Plaintiff has not exhausted administrative remedies for either his *Bivens* claims or any claims he purports to raise under the Federal Tort Claims Act. Plaintiff's four-page Objection disputes the factual and legal analysis set forth in Defendants' Motion to Dismiss Amended Complaint. Mr. Rodriguez generally disputes Defendants' claims of immunity and insists that he has complied with all applicable exhaustion requirements. Plaintiff also maintains that his Amended Complaint sets forth sufficient facts to support claims of inadequate care and due process violations. Both sides have provide the court with extraneous documents or exhibits. To the extent that the court's analysis is governed by Fed. R. Civ. P. 12(b)(6), it must be based on construction of the allegations contained in the Amended Complaint. In applying Rule 12(b)(6), the court will not consider extraneous documents attached to the parties' briefs or additional facts referenced by either party.

**ANALYSIS**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. Art. III, §2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992). "[T]he party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

"Motions to dismiss pursuant to Rule 12(b)(1) may take two forms." *Amoco Production Co. v. Aspen Group*, 8 F. Supp.2d 1249, 1251 (D. Colo. 1998). First, a party may attack the facial sufficiency of the complaint and the court must accept the allegations of the complaint as true. *Id.* Second, a party may attack the factual assertions regarding subject matter jurisdiction through affidavits and other documents, and the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The court can consider such extraneous materials under Rule 12(b)(1) without converting a motion to dismiss into a motion for summary judgment. *Cf. King v. United States*, 53 F. Supp. 2d 1056, 1064 (D. Colo. 1999), *rev'd in part on other grounds*, 301 F.3d 1270 (10th Cir. 2002); *Zerr v. Johnson*, 894 F. Supp. 372, 375 (D. Colo. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). *See also Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) ("a Rule 12(b)(6) motion is addressed to the face of the pleading"). The court must accept the well-pleaded allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). However, to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*  While *pro se* pleadings should be "construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim.  *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C.).  This court cannot be a *pro se* litigant's advocate.  *Hall v. Bellmon*, 935 F.2d at 1110.  Just as importantly, the court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not asserted.  *Associated General Contractors of California., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

1.      *Relief Under The Federal Tort Claims Act Claim*

Defendants have moved to dismiss Plaintiff's claim under the Federal Tort Claims Act, arguing that Mr. Rodriguez has failed to meet the jurisdictional prerequisites imposed by that statute.  In support of this argument, Defendants have attached relevant documents to their Motion to Dismiss and the Reply in Support of Their Motion to Dismiss.  For purposes of resolving this challenge to the court's subject matter jurisdiction, the court will consider these extraneous documents.

From the materials provided to the court, the following chronology of events can be established.  Mr. Rodriguez filed his administrative Claim for Damage, Injury or Death on

August 29, 2008.  This document specifically mentions non-party [FNU] Osagie and Defendant Gladbach as the individuals who "denied treatment negligently and in the form of malpractice" in connection with the altercation on July 17, 2008.  The administrative claim does not reference or attribute any negligence or malpractice to Defendants Wiley, Bauer, Smith, Allred or Nafziger.  On September 17, 2008, the Bureau of Prisons acknowledged receipt of the FTCA claim and advised Mr. Rodriguez that the government's response was due on or before March 4, 2009.  Plaintiff initiated this civil action on November 19, 2008.  On January 13, 2009, Mr. Rodriguez was informed that his claim under the Federal Tort Claims Act had been denied. Plaintiff filed the Amended Complaint on June 1, 2009 and asserted for the first time a claim for relief specifically related to the incident described in his administrative claim.

The Tenth Circuit has "specifically held that the FTCA and a *Bivens* claim are alternative remedies." *Robbins v. Wilkie*, 300 F.3d 1208, 1213 (10th Cir. 2002).  "These are separate and distinct causes of action arising out of the same transaction."  *Engle v. Mecke*, 24 F.3d 133, 135 (10th Cir. 1994).  "[A] *Bivens* claim cannot be brought against the BOP, as a federal agency, or . . . other defendants in their official capacities." *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204,1214 (10th Cir. 2003) (citation omitted), *abrogated on other grounds*, 549 U.S. 199 (2007).  "Although the plaintiff may elect initially to bring his action against either defendant, a judgment against the United States under the FTCA constitutes 'a complete bar to any action by the claimant, by reason of the same subject matter, against the employee ... whose act or omission gave rise to the claim.' "  *Engle v. Mecke*, 24 F.3d at 135 (quoting 28 U.S.C. § 2676).

"As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Duplan v. Harper*, 188 F.3d

1195, 1199 (10th Cir.1999).  Before a party can sue a federal agency under the Federal Tort

Claims Act, that party must first exhaust its administrative remedies with the appropriate federal

agency.  *See* 28 U.S.C. § 2675(a).  A party's satisfactory presentation to the administrative

agency includes "(1) a written statement sufficiently describing the injury to enable the agency to

begin its own investigation, and (2) a sum certain damages claim."  *Staggs v. United States*, 425

F.3d 881, 884 (10th Cir. 2005) (quoting *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir.

1992)).  These exhaustion requirements cannot be waived.  *Boehme v. United States Postal*

*Serv.*, 343 F.3d 1260, 1262 (10th Cir. 2003); *Bradley v. United States*, 951 F.2d 268, 270 (10th

Cir. 1991).  *See also Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) (stating that §

2675(a) "admits of no exceptions").

  Moreover, a plaintiff may not initiate an action under the FTCA until his administrative

claim has "been finally denied by the agency in writing and sent by certified or registered mail."

*See* 28 U.S.C. § 2675(a).  Defendants have presented unrefuted documentation showing that the

BOP's final disposition of Plaintiff's administrative claim had not been received at the time the

original Complaint was filed.  Mr. Rodriguez suggests, without further explanation, that his

FTCA claim has been "adequately exhausted."  However, the exhaustion requirement under the

Federal Tort Claims Act is a jurisdictional limitation that must be strictly construed.  *See Three-*

*M Enterprises, Inc. v. United States*, 548 F.2d 293, 294-95 (10th Cir. 1977).

  More importantly, Plaintiff cannot meet the jurisdictional requirements of the FTCA by

asserting his tort claim for the first time in the Amended Complaint.  The Tenth Circuit has held

that an amended complaint filed after the FTCA exhaustion requirement has been satisfied

cannot cure a prematurely filed original complaint.  *See Dunlap v. Harper*, 188 F.3d at 1199.

8

"Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." *Id.  See also Stine v. Swanson*, 2008 WL 4330568, *1 (D. Colo. 2008) (in dismissing a FTCA claim brought by a federal prisoner, held that plaintiff's amended complaint cannot cure a lack of subject matter jurisdiction that existed at the time of the filing of the original complaint); *Rashad v. D.C. Central Detention Facility*, 570 F. Supp. 2d 20, 24 (D.D.C. 2008) (holding that a failure to comply with the FTCA exhaustion requirement cannot be cured by amending the original complaint at a later date); *Stevens v. United States*, 2002 WL 1156027, *2  (D. Kan. 2002) (held that a federal prisoner's prematurely filed FTCA claim could not be cured by amendment of the complaint, but only by the filing of a new and independent action).[3]

In short, the record demonstrates that Mr. Rodriguez has not satisfied the exhaustion requirement under the FTCA.  Accordingly, I recommend that Plaintiff's Amended Complaint be dismissed to the extent that it purports to assert one or more claims under the Federal Tort Claims Act.

2.      *Claims Against Defendants in their Official Capacity*

It is not completely clear whether Plaintiff Rodriguez is suing the named Defendants in their official or individual capacities, or both.  Where a plaintiff fails to indicate the nature of the liability sought, the court should look to "'the substance of the pleadings and the course of the proceedings' to determine whether the plaintiff is suing the defendants in their individual

---

[3]      Copies of unpublished decisions cited are attached to this Recommendation.

capacities or their official capacities, or both." *Arceo v. City of Junction City, Kansas*, 182 F. Supp.2d 1062, 1089-90 (D. Kan. 2002) (quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)).  Here, Mr. Rodriguez seems to challenge actions taken by Defendants based upon and while serving in their official capacity.  *Cf. Hartman v. Kickapoo Tribe Gaming Commission*, 176 F. Supp.2d 1168, 1177 (D. Kan. 2001) (presuming that defendant was sued in his official capacity where complaint referred to defendant by his official title and alleged actions taken in his official capacity).

The court further notes that the Amended Complaint seeks both compensatory and injunctive relief.  The Tenth Circuit has recognized that "an action for injunctive relief no matter how it is phrased is against a defendant in official capacity only; plaintiff seeks to change the behavior of the governmental entity."  *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 718 (10th Cir. 1988) (citing *Scott v. Lacy*, 811 F.2d 1153, 1153-54 (7th Cir. 1987)).

The law is clear, however, that "[w]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neal*, 867 F.2d 589, 590 (10th Cir. 1989) (federal employees, when sued in their official capacities, are immune from suit unless sovereign immunity has been waived) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  *See also Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996).  It is also well-established that the United States is immune from suit unless it has consented to be sued.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  The United States has not waived its sovereign immunity for constitutional torts. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. at 410.  *See also Federal*

10

*Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 483-86 (1994) (holding that a *Bivens* action

may not be brought against the United States).

Plaintiff's response to Defendants' motion to dismiss does not cite any waiver of

sovereign immunity which would extend to the claims asserted in this case.  *See United States v.*

*$30,006.25 in United States Currency*, 236 F.3d 610 (10th Cir. 2000) (recognizing that a "waiver

of sovereign immunity cannot be implied but must be unequivocally expressed") (citing *United*

*States v. Mitchell*, 445 U.S. at 538).  Accordingly, any claims for money damages against

Defendants in their official capacities must be dismissed and Mr. Rodriguez may only proceed

against Defendants in their personal capacities.  *See also Jaffee v. United States*, 592 F.2d 712,

717 (3d Cir. 1979) (holding that a *Bivens* action may be brought against government officials,

not the government itself).

As the court previously noted, subject matter jurisdiction would exist for claims seeking

injunctive or declaratory relief against Defendants in their official capacities.  *See Simmat v.*

*Bureau of Prisons*, 413 F.3d 1225, 1231-36 (10th Cir. 2005).  However, it appears that Mr.

Rodriguez has been transferred from ADX and is no longer under Defendants' control or

custody.  Based upon that development, Plaintiff's request for declaratory and injunctive is now

moot, at least as to the Defendants in this action.  *See Beierle v. Colorado Department of*

*Corrections*, 79 Fed. Appx. 373, 375 (10th Cir. 2003) (holding that the plaintiff prisoner's claims

for prospective injunctive relief pertaining to constitutional violations at a particular institution

were moot because the plaintiff was no longer incarcerated at that facility); *McAlpine v.*

*Thompson*, 187 F.3d 1213, (10th Cir. 1999) ("a plaintiff cannot maintain a declaratory or

injunctive action unless he or she can demonstrate a good chance of being likewise injured [by

the defendant] in the future"). *See also Fredette v. Hemingway*, 65 Fed. Appx. 929, 931 (6th Cir. 2003) (holding that "when events occur during the pendency of a litigation which render the court unable to grant the requested relief," the case is moot).

3.      *Public Health Service Employees*

Defendants R. Bauer and N. Gladbach have moved to be dismissed from this action based on their absolute immunity as United States Public Health Service employees.  Title 42 U.S.C. § 233(a) "makes the United States the exclusive Defendant for injuries that employees of the Public Health Service cause while acting within the scope of their employment." *Lurch v. United States*, 719 F.2d 333, 340 n. 10 (10th Cir. 1983)*.  See also Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) ("Section 233(a) makes the Federal Tort Claims Act the exclusive remedy for specified actions against members of the Public Health Service."); *Muhammad v. Sosa*, 2008 WL 762253, *2 (D. Colo. 2008) (dismissing claims against R. Bauer after holding that as a commissioned officer with the Public Health Service, Defendant Bauer was immune to liability for claims arising under *Bivens*); *Stine v. Fetterhoff*, 2008 WL 4330572, **7-8 (D. Colo. 2008) (holding that defendant was immune from individual liability where plaintiff sought to recover damages for injuries resulting from a commissioned Public Health Service employee who was acting within the scope of his or her employment); *Jones v. Berhane*, 2007 WL 3054190,*3 n. 6 (D. Kan. 2007) (holding that a federal inmate could not maintain a *Bivens* action against prison doctors or certified physicians' assistants for acts or omissions while performing their official duties if they were deemed to be employees of the Public Health Service).

The Amended Complaint does not allege any facts that would suggest that Defendants Bauer and Gladbach are not United States Public Health Service employees or that they were not

acting within the scope of their employment.  Defendants Bauer and Gladbach are properly

dismissed from this civil action because the FTCA is the exclusive remedy for Plaintiff's claims

against them.

4.      *Qualified Immunity*

Defendants have raised the defense of qualified immunity as to any claims asserted

against them.  Under the doctrine of qualified immunity, government officials are immune from

civil damages liability for constitutional torts as long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated.  *Anderson v. Creighton*, 483

U.S. 635, 638 (1987).  Qualified immunity protects defendants not only from liability, but also

from suit.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Such immunity is qualified in that

it does not obtain when otherwise immune officials violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Armijo v. Wagon Mound

Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d

1147, 1153 (10th Cir. 1997)).  Whether Defendants are entitled to qualified immunity is a legal

question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229

(2008).

This court must review Defendants' claim of qualified immunity "under the customary

motion to dismiss standard."  *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).  "[A]

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.*  However, the court is also mindful of the United States Supreme Court's admonition that a

ruling on the issue of qualified immunity should be made at the earliest possible stage of the

proceeding in order to preserve the protections of the privilege.  *See Saucier v. Katz*, 533 U.S.

194 (2001), *overruled on other grounds*, 129 S.Ct. 808 (2009).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right. Second, . . .
> the court must decide whether the right at issue was clearly established at the time
> of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted).  In determining whether a right is clearly established, the relevant inquiry

is "whether it would be clear to a [reasonable government official] that his conduct was unlawful

in the situation he confronted.."  *Saucier v. Katz*, 533 U.S. at 202.  "A reviewing court may

exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand."

*Id*. "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.

*Id*.  The plaintiff bears the burden of showing with particularity facts and law establishing the

inference that the defendant violated a clearly established federal constitutional or statutory right.

*Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The court will proceed to apply this two-step analysis to the individual claims for relief

asserted in the Amended Complaint.

A.    First Claim for Relief

The First Claim asserts a violation of the Eighth and Fourteenth Amendments based upon

Defendants' allegedly deliberate indifference to Plaintiff's hepatitis C infection.  Specifically,

Mr. Rodriguez alleges that upon his arrival at ADX, he told Defendant Nafziger that he had

hepatis C, was suffering from abdominal pains and chronic fatigue, and that he had completed

the lab work-up necessary for further treatment of his condition.  Plaintiff contends that while he sent numerous requests for treatment that went unanswered and did not receive "a proper chronic care clinic exam" by a doctor, prison personnel have excused these omissions by falsely representing that he had refused treatment.  Mr. Rodriguez states that "no doctor examined me until approximately" December 23, 2008, more than two years after his arrival at ADX.  The First Claim alleges that Defendants purposely delayed in addressing Plaintiff's hepatitis C knowing that "if they stalled me out, endangering my life, Central Office would (illegally) automatically refuse me based on time remaining on sentence, w/out regard to anything else, saving them money."

As to individual defendants, the First Claim avers that Defendant Gladbach (an Advanced Practice Nurse III) provided "only cursory once overs" in response to his requests for "a proper chronic care clinic (CCC) exam."  Plaintiff alleges that Drs. Allred and Nafziger violated BOP policies by delegating their responsibilities to Defendant Gladbach and by failing to properly examine Mr. Rodriguez or personally review his medical records.  Defendants Bauer and Smith allegedly abdicated their responsibility to "coordinat[e] CCC's and ensur[e] each patient is treated and seen followed-up, etc."  Finally, the First Claim avers that Defendant Wiley was "directly, verbally and written, . . . informed that I have serious chronic disease and was not seeing anyone and did nothing . . . [to] correct or discipline, prevent from being continued."

The Motion to Dismiss asserts that the "Amended Complaint makes no allegation that each Defendant was aware Plaintiff had an emergent need for Hepatitis C medication."  Defendants further argue that Mr. Rodriguez has failed to allege they "knew Plaintiff required access to specific treatment, and on an emergency basis, or that failure to immediately provide

that treatment would seriously and irreparably harm Plaintiff." Finally, Defendants insist that the Amended Complaint does not allege facts that would show "Defendants had a 'sufficiently culpable state of mind,' as required under the Eighth Amendment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976) (internal citations omitted)). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. *See also Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2002)) (recognizing that (a) a medical professional failing to treat a serious medical condition properly; and (b) a prison official preventing an inmate from receiving medical treatment may constitute deliberate indifference in a prison medical case).

To assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, Mr. Rodriguez must allege that (1) he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). It cannot be disputed that hepatitis C is a serious disease. *See McKenna v.*

*Wright*, 2002 WL 338375, *6 (S.D.N.Y. 2002) (finding that, at its advanced stages, hepatis

qualifies as a sufficiently serious medical condition under the Eighth Amendment).  Although

Defendants' motion makes passing reference to Plaintiff's medical records, suggesting those

records show Mr. Rodriguez was seen multiple times for his hepatitis C, those medical records

were not attached to the Amended Complaint and are not properly before the court.  I also note

that all discovery has been stayed in this case.

      The second element, a subjective inquiry, requires the inmate to demonstrate that the

prison officials acted with deliberate indifference toward his or her needs.  *Farmer v. Brennan*,

511 U.S. at 834.  Defendants' qualified immunity defense primarily is directed to this issue.  A

defendant acts with deliberate indifference if his or her conduct "disregards a known or obvious

risk that is very likely to result in the violation of a prisoner's constitutional rights."  *Id.* at 1496.

The Supreme Court explained the test for deliberate indifference:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official knows of and
> disregards an excessive risk to inmate health or safety; the official must both be aware of
> facts from which the inference could be drawn that a substantial risk of serious harm
> exists, and he must also draw the inference.

*Id.* at 837.  *See also Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997).  "To be

guilty of deliberate indifference, the defendant must know he is creating a substantial risk of

bodily harm."  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation

marks and citation omitted).

      I conclude that the Amended Complaint sets forth sufficient facts to satisfy the subjective

element of an Eighth Amendment claim.  In this case, Mr. Rodriguez specifically alleges that he

discussed his hepatitis C condition with Defendant Nafziger and that Dr. Nafziger was aware of

his pain complaints and the fact that Plaintiff had completed "the lab work-ups clearing" him for treatment.  The First Claim alleges that Mr. Rodriguez made repeated requests for treatment which were ignored or addressed with only cursory sessions with non-physicians.  Plaintiff insists that two years went by without medical examinations by a qualified physician.  The First Claim further alleges that Defendants placed documents in his medical records to create the false impression that any lack of treatment was attributable to Mr. Rodriguez's refusal to cooperate with medical procedures.  As for Defendants' attempts to blame the Central Office for the ultimate decisions regarding Plaintiff's eligibility for treatment, the First Claim asserts that Defendants delayed based on budgetary considerations rather than medical need.  *Cf. Whitington v. Ortiz*, 207 Fed. Appx. 179, 189 (10th Cir. 2009) (holding that dismissal of plaintiff's complaint was improper where prisoner's complaint alleging denial of basic hygiene items directly or by implication alluded to the mental state of most of the defendants).  At this stage of the proceedings, the court must accept as true all of the factual allegations contained in the Amended Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

I conclude that the First Claim is sufficient to assert an Eighth Amendment claim against Defendants Nafziger, Allred, Smith, and Wiley.  Taking the allegations in the First Claim as true, as I must for purposes of Rule 12(b)(6), the court finds that Mr. Rodriguez has satisfied the element of personal participation with respect to the foregoing individuals.  Defendants correctly note that liability cannot be premised on a defendant's supervisory status.  However, a plaintiff may demonstrate personal participation "by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance."  *See Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  *Cf.*

*Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1191 (D. Colo. 1999) (plaintiff's allegations of

personal participation were sufficient where the amended complaint claimed that the supervisor

defendants had actual notice that inadequate medical care was being provided and failed to

investigate, intervene or correct that situation); *Green v. Federal Bureau of Prisons*, 2009 WL

150650, **4-7 (D. Colo. 2009) (holding that the plaintiff prisoner properly stated an Eighth

Amendment claim for failure to provide timely and appropriate treatment for his hepatitis C;

noted that plaintiff was alleging more than mere disagreement with treatment decisions; rather

plaintiff was alleging a complete failure to treat or even test the plaintiff for over a year).

Defendants' challenges to the merits of the First Claim are more appropriately addressed in a

motion for summary judgment.

B.    Second Claim for Relief

Plaintiff's Second Claim alleges an Eighth and Fourteenth Amendment violation based

upon Defendants' deliberate indifference to his serious medical needs as manifested by their 18-

month delay in providing him with replacement eye glasses.  Mr. Rodriguez contends that when

he arrived at ADX in July 2006, he advised Defendant Nafziger that his current eye glasses were

"damaged/unusable" and that without adequate eye wear his "vision was blurry and any reading,

television or focusing caused headaches."  According to Mr. Rodriguez, this condition was

particularly problematic because his eligibility for transfer depended upon completing school

programs that were only available on television.  The Amended Complaint alleges that "[d]espite

constant complaints, it took [approximately] 18 months to get glasses."  Plaintiff avers that

Defendants "Bauer and Smith are liable for setting these things up, Nafziger is liable for double

checking and ensuring no patients are being left to unnecessarily suffer pain or poor quality of

life." Mr. Rodriguez seeks to hold Defendant Wiley liable under the Second Claim because he "was made fully aware and also thinks 18 months is not too long to have to suffer pain." Finally, the Second Claim concedes that while Defendant Allred "was not here for my ordeal," his liability is based on the fact that Allred "has taken Nafziger's place and fully supports this practice."

An inmate alleging an Eighth Amendment claim based on delayed medical treatment does not prove the claim simply by showing that a delay in treatment caused additional pain or injury. "The Eighth Amendment's ban on cruel and unusual treatment is violated only when the deprivation (or delay) of medical treatment constitutes 'the unnecessary and wanton infliction of pain.'" *Grassi v. Corrections Corporation of America,* 2008 WL 5172154 * 5 (D. Colo. 2008) (quoting *Estelle v. Gamble*, 429 U.S. at 104). "Thus, to prove a claim of deliberate indifference predicated on the delay in providing medical care, an inmate must show: (i) that he suffered from a serious medical need; (ii) that medical care to address that need was unnecessarily delayed; (iii) that the delay manifested the defendant's subjective disregard for the inmate's needs; and (iv) that the delay caused the inmate to suffer substantial harm, whether in the form of significant pain or permanent physical injury." *Id.*

I conclude that Mr. Rodriguez has not alleged sufficient facts to satisfy the pleading requirements for an Eighth Amendment claim. Although Plaintiff alleges that he was denied glasses for 18 months and during that time suffered "blurry" vision and headaches, the Eighth Amendment requires deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 104. *Cf. Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (even if prison official is deliberately indifferent by failing to provide treatment, liability does not exist if the

medical need is not objectively serious). The court recognizes that visual impairments can represent a serious medical condition. *Compare, e.g., Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996) (finding a serious medical condition where the confiscation of plaintiff's glasses caused physical degeneration that rendered plaintiff almost sightless and caused headaches) and *Benter v. Peck*, 825 F. Supp. 1411, 1416 (S.D. Iowa 1993) (holding that the plaintiff prisoner had a serious medical need where his eyesight, without glasses, fell within the parameters of blindness).

However, the Eighth Amendment requires an objectively serious medical condition. *Cf. Dunville v. Morton*, 2000 WL 1206653, *2 (7th Cir. 2000) (find no Eighth Amendment violation where a prisoner waited 15 months for an eye examination; although the plaintiff complained about eye pain and headaches during that period, held that plaintiff could not establish detriment in a constitutional sense from delayed treatment of a medical condition never even established to be serious); *Harris v. Townley*, 2010 WL 373996, *2 (W.D. Va. 2010) (in denying the *pro se* prisoner's Eighth Amendment claim, noted that the plaintiff did not allege that he had sought medical treatment for the headaches and sore eyes that he attributed to having gone without glasses); *Feathers v. McFaul*, 2010 WL 184242, *2 (N.D. Ohio 2010) (held that plaintiff's allegation that he suffered from tinnitus and headaches did not constitute serious medical conditions that implicate the Eighth Amendment); *Davidson v. Scully*, 155 F. Supp.2d 77, 87-89 (S.D.N.Y. 2001) (plaintiff's lack of proper glasses did not cause degeneration or extreme pain and was not sufficiently serious to constitute cruel and unusual punishment).

A plaintiff's subjective assessment of their own medical condition or needs is not determinative. *Cf. Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 829 (7th Cir. 2009)

(suggesting that a prison medical staff that fails to treat minor pains "- the sorts of ailments for which many people who are not in prison do not seek medical attention - does not by its refusal violate the Constitution").  Absent some allegation of a serious medical condition that posses a significant risk to his health or safety, Mr. Rodriguez has not satisfied the objective component of an Eighth Amendment claim.

Assuming, *arguendo*, that Plaintiff's headaches and blurry vision comports with the objective component of an Eighth Amendment claim, the Second Claim must still satisfy the subjective requirement of the deliberate indifference standard.  "Deliberate indifference is 'something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Dual v. Lane*, 959 F.2d 673, 577 (7th Cir. 1992).  The factual allegations in the Second Claim do not rise to this standard.  For example, Plaintiff merely alleges that Defendants Bauer and Smith had some unexplained "responsibility" for his eye care.  There are no allegations in the Second Claim that would even imply that Defendants Bauer or Smith knew of the prolonged delay in getting Plaintiff's glasses or his recurring headaches, much less that Plaintiff faced a substantial risk of harm.  The court must determine whether the Second Claim contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570.  As drafted, the Second Claim offers nothing more than "a sheer possibility" that Defendants Bauer and Smith committed a constitutional violation.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556).

The allegations against Dr. Allred are even more tenuous.  Defendant Allred is named in the Second Claim simply because he replaced Dr. Nafziger.  The Eighth Amendment requires

factual allegations establishing that Defendant Allred personally participated in the constitutional violation.  *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal participation, Mr. Rodriguez must show an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  An individual personally participates in the deprivation of a constitutional right if (a) he participates directly in the constitutional violation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent.  *See Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985).  Here, there are no allegations that Defendant Allred played any part in the delay in securing Plaintiff's new glasses.

Fairly construed, the Second Claim cites Dr. Nafziger for not "double checking" on the status of his glasses and for not "ensuring [that Mr. Rodriguez was not] are being left to unnecessarily suffer pain or poor quality of life."  While Mr. Rodriguez blames Dr. Nafziger for the delay in obtaining his new glasses, deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). *See also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (simple negligence or inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain).  The Second Claim does not allege facts that would establish deliberate indifference on the part of Defendant Nafziger.

Having determined that the Second Claim should be dismissed as to all other defendants,

23

the court must also recommend dismissal of this Claim as to Defendant Wiley.  In order to establish liability by a supervisor, a plaintiff "must first show the supervisor's subordinates violated the constitution."  *See Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Mercado v. Wiley*, 2009 WL 440930, *13 (D. Colo. 2009).  Without a properly alleged constitutional violation by other defendants, the court must recommend dismissal of Defendant Wiley as well.  Measured against well-established precedents, Plaintiff's Second Claim does not state an Eighth Amendment claim against any of the named Defendants.

C.    Third Claim for Relief

The Third Claim alleges an Eighth Amendment violation based upon the unsanitary condition of the ADX recreation areas.  While the Third Claim refers to the presence of human waste and prisoners' bodily fluids in the prison recreational areas, Plaintiff merely alleges that "Warden Wiley and Unit Manager Collins have altered policy and now only let the orderlies out 2x a week (when possible, at times it is 4x a month)."  Plaintiff suggests that this reduced cleaning schedule increases the "risk of staph infection [and] other sicknesses"

The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).  *See also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (acknowledging that the Eighth Amendment prohibits cruel and unusual "punishments," not cruel and unusual "conditions").  "[A] prisoner must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to inmate health or safety.*"  Despair v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001).

An important factor in determining whether conditions of confinement meet

24

constitutional standards is the length of time of the condition.  Conditions may be tolerable for a few days yet intolerably cruel for weeks or months.  *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).  *See also Lanford v. Grady County Detention Center*, 2009 WL 3855959, *5 (W.D. Okla. 2009) ("Because the sufficiency of a conditions of confinement claim depends upon the 'particular facts of each situation; the circumstances, nature and duration of the challenged conditions must be carefully considered.'").  While the Third Claim suggests that ADX unit orderlies are "supposed to come out 7x a week, per policy . . . to clean rec areas," Mr. Rodriguez acknowledges that outside recreational areas are cleaned between four and eight times a month.

"Human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to [it].'" *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)).  However,

> because the Eighth Amendment "does not prohibit cruel and unusual prison *conditions*," but instead prohibits "cruel and unusual *punishments*," a prisoner who has not suffered a "serious or significant physical or mental injury as a result of the challenged conditions, has not demonstrated that he was subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.

*Counts v. Newhart*, 951 F. Supp. 579, 586-87 (E.D. Va. 1996) (quoting *Strickler v. Waters*, 989 F.2d, 1375, 1381(4th Cir. 1993)) (emphasis in original).  *See also Rowlett v. Friel*, 2005 WL 2266595, *5 (D. Utah 2005) (rejecting the suggestion that "any exposure to human waste, no matter how brief or remote will state an Eighth Amendment claim").  *Compare White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (holding that an eleven-day stay in an unsanitary cell did not result in a constitutional violation because of the relative brevity of the stay and the availability of cleaning supplies).  In this case, Mr. Rodriguez concedes that he suffered no ill-effects from

allegedly unsanitary conditions in the recreation areas.  *See Glover River Org. v.  United States Department of Interior*, 675 F.2d 251, 253 (10th Cir. 1982) (holding that a plaintiff has no standing to bring a claim, unless he alleges "a distinct and palpable injury to himself" and "some chain of causation linking that injury to the challenged actions of the defendant").

As with any other Eighth Amendment claim, a plaintiff challenging conditions of confinement must demonstrate that the named defendants had a "sufficiently culpable state of mind" or were "deliberately indifferent" to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).  "To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm."  *Green v. Branson*, 108 F.3d at 1302 (internal quotation marks and citation omitted).  Mr. Rodriguez has not set forth facts in the Third Claim that would demonstrate, or even suggest, that Defendants Wiley and Collins acted with a sufficiently culpable state of mind, that is, deliberate indifference.  Conspicuously absent from the Third Claim is any allegation that Mr. Rodriguez presented his sanitation concerns to either Defendant Wiley or Defendant Collins.  At best, Plaintiff describes a difference of opinion as to the appropriate schedule for cleaning recreation areas.  The Third Claim should be dismissed for failure to state a claim for relief under the Eighth Amendment.

D.    Fourth Claim for Relief

Plaintiff's Fourth Claim alleges that Defendants' Wiley, Collins and Ramirez have violated Mr. Rodriguez's due process rights and subjected him to cruel and unusual punishment based upon the conditions of his confinement.  Plaintiff contends that for the past three years, he has been housed "in an unauthorized control unit without the safeguards afforded to a prisoner in

26

such extreme, isolated and confined situations."  Mr. Rodriguez claims that the conditions of

confinement at ADX prevented him from participating in pre-release halfway house programs to

the fullest extent, limited most of his communication with other prisoners, subjected him to

sensory and environmental deprivation, and limited his access to medical personnel.  The Fourth

Claim alleges that Defendants "Wiley and Collins put me in for a control unit setting" and that

Defendant Ramirez, in his capacity as a disciplinary hearing officer, imposed sanctions that

"purposely kept [Plaintiff] in these conditions of confinement."

Essential to any due process claim is the existence of a liberty interest sufficient to

require procedural protections prior to its deprivation.  Mr. Rodriguez claims that he was

subjected to conditions of confinement that he equates to an "unauthorized control unit."  It is

well-settled, however, that a prisoner's classification ordinarily does not deprive that individual

of liberty.  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  *Cf. Meachum v. Fano*, 427

U.S. 215, 224-25 (1976) (the transfer of a prisoner to a more restrictive facility is not actionable

as a deprivation of constitutionally protected liberty ).  Courts have held that a federal prisoner is

not entitled to a hearing before being transferred to a locked-down maximum security facility,

such as ADX.  *See Miller v. Henman*, 804 F.2d 421, 423-27 (7th Cir. 1986); *Bruscino v. Carlson*,

654 F. Supp. 609, 615-16 (N.D. Ill. 1987).  Internal administrative procedures to guide the use of

administrative segregation do not create a protected liberty interest.  *Price v. Kelly*, 847 F. Supp.

163, 166  (D.D.C. 1994).

Mr. Rodriguez has not alleged sufficient facts to show that the conditions of his

confinement as an inmate at ADX violated a protected liberty interest or implicated a

fundamental due process right.  In *Sandin v. Connor,* 515 U.S. 472 (1995), the Supreme Court

held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or

conditions imposed

> while not exceeding the sentence in such an unexpected manner as to give rise to
> protection by the Due Process Clause of its own force . . . nonetheless impose[]
> atypical and significant hardship on the inmate in relation to the ordinary
> incidents of prison life.

*Id.* at 484, *implicitly overruled on other grounds*, 520 U.S. 641 (1997).  As one court has noted,

"it is the *nature* of the deprivation and not the *reason* for the deprivation that is central to the

*Sandin* analysis."  *McClary v. Kelly*, 4 F. Supp.2d 195, 199 (W.D.N.Y. 1998) (court should

compare the conditions of plaintiff's confinement with conditions of confinement afforded

inmates in general population in state's maximum security prisons).

Whether confinement conditions impose such an atypical and significant hardship as to

violate a liberty interest is a legal determination.  *See Beverati v. Smith*, 120 F.3d 500, 503 (4th

Cir. 1997).  Here, the Amended Complaint does not allege that Mr. Rodriguez was confined

under conditions markedly different from other prisoners at ADX.  *Cf. Ajaj v. United States*, 293

Fed. Appx. 575, 583 (10th Cir. 2008) (holding that plaintiff's conditions of confinement at ADX

did not, "even taken together, constitute the sort of 'significant department from the healthy

habilitative environment the state is required to provide its inmates'"); *Hill v. Pugh*, 75 Fed.

Appx. 715, 720 (10th Cir. 2003) (holding that the plaintiff's placement and retention in ADX did

not violate his due process rights); *Moore v. Cooksey*, 242 F.3d 389 (10th Cir. 2000) (Table)

(noting that "conditions in ADX are within 'the range of confinement to be normally expected

for one serving' a federal sentence'").  *See also Merchant v. Hawk-Sawyer*, 2002 WL 927026

(6th Cir. 2002) (plaintiff's 21-month confinement in special housing unit was no an atypical and

significant hardship on inmate in relation to ordinary incidents of prison life).  Having failed to

allege the violation of a protected liberty interest, Mr. Rodriguez' due process claim must be dismissed as to all Defendants.

Plaintiff's Fourth Claim is no more effective when measured by Eighth Amendment standards.  The Tenth Circuit has previously addressed an Eighth Amendment challenge to conditions of confinement at ADX.  In that case, the appellate court concluded that the prisoner's cruel and unusual punishment allegations must be measured against a prison official's constitutional obligation to maintain "'humane conditions of confinement, including 'adequate food, clothing, shelter and medical care.'" *Hill v. Pugh*, 75 Fed. Appx. At 720-21.  In upholding dismissal of the *pro se* plaintiff's claim, the Tenth Circuit acknowledged the prisoner's claim that he was subjected to extended periods of isolation and resulting sensory deprivation. Nevertheless, the Tenth Circuit found no Eighth Amendment violation in the absence of allegations that the prisoner had been deprived of  "minimal physical requirements - food, shelter, clothing and warmth." *Id.* at 721.  Mr. Rodriguez's Fourth Claim must be denied for the same reasons.

E.    Fifth Claim for Relief

Apart from Plaintiff's negligence/malpractice claims under the FTCA addressed earlier in this Recommendation, the Fifth Claim also alleges that Mr. Rodriguez's Eighth Amendment and due process rights were violated after he "had a mental breakdown/argument during an altercation with staff attempting to take [him] to the hole for alleged contraband."  During the course of this altercation, Plaintiff claims that he was shot at point blank range by Defendant Janson without justification and contrary to prison policy.  Mr. Rodriguez also states that Lieutenant Janson shot him "with Defendant Wiley's authorization," apparently because Warden

Wiley "has standing orders to shoot and gas anyone refusing to cuff up, regardless of policy or any actual threat." Plaintiff contends that "discovery will show the pattern." The Fifth Claim further alleges that Defendant Jansen "proceeded to restrain me for over 24 hours without cause or necessity." Mr. Rodriguez contends that this use of restraint was "ok'd by Defendant Bauer and possibly Defendants Allred and/or Nafziger."

Defendants have moved to dismiss the Fifth Claim, arguing that Plaintiff failed to allege any physical injury. I disagree. The Fifth Claim alleges that Plaintiff was physically injured as a result of being shot by Defendant Janson and then restrained for over 24 hours. Mr. Rodriguez claims that a result of this incident, he is "still in pain and . . . [has] been taking increasingly stronger medication for pain" from which he is experiencing side effects.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, bars a prisoner from bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." While the PRLA requires "physical injury," the threshold may not be particularly high. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PRLA requirement should be construed consistent with the "well-established Eighth Amendment standard," and must be more than *de minimis,* but need not be significant). At this juncture, I find that the Fifth Claim alleges sufficient physical injury to preclude dismissal on that basis.

I will, however, recommend dismissal of Defendants Allred and Nafziger from the Fifth Claim for Relief. Mr. Rodriguez alleges nothing more than the "possibility" that Drs. Allred and Nafziger were aware and approved the extended use of physical restraints in the alleged incident. As the Supreme Court noted in *Ashcroft v. Iqbal*, 129 S.Ct. at 1949, a allegation that suggests nothing more than "a sheer possibility" will not suffice to state a claim for a constitutional

violation. Without more substantial allegations demonstrating personal participation in the alleged violation, Defendants Allred and Nafziger must be dismissed from this Claim.

5.      *Exhaustion under the Prison Litigation Reform Act*

Defendants have moved to dismiss Claims Two through Five based upon Plaintiff's alleged failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his confinement. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). *See also Jones v. Bock*, 549 U.S. at 218 ("to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, – rules that are defined not by the PLRA, but by the prison grievance process itself") (internal quotation marks and citation omitted).

In *Jones v. Bock*, 549 U.S. 199 (2007), "[t]he Supreme Court . . . set forth a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.' "

*Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. at 216 and citing *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)).  Now "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."  *Roberts v. Barreras*, 484 F.3d at 1241.  Dismissal under § 1997e(a) for failure to exhaust administrative remedies therefore cannot usually be made on pleadings without proof. *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse'") (quoting *Aguilar-Avellaveda v. Terrell*, 478 F.3d at 1225)).

## CONCLUSION

Accordingly, IT IS RECOMMENDED THAT Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. # 75) be GRANTED IN PART, dismissing (1) with prejudice all claims against the Defendants in their official capacity; (2) with prejudice all claims against Defendants Gladbach and Bauer; (3) without prejudice all claims asserted against the Defendants under the Federal Tort Claims Act; (4) with prejudice Plaintiff's claims for declaratory and injunctive relief; (5) without prejudice the Second Claim for Relief as to all Defendants; (6) without prejudice the Third Claim for Relief as to all Defendants; (7) without prejudice the Fourth Claim for Relief as to all Defendants; and (8) without prejudice the Fifth Claim for Relief as to Defendants Nafziger and Allred.

Further, IT IS RECOMMENDED THAT  Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. # 75) be DENIED IN PART with respect to the First Claim for Relief as to Defendants Nafziger, Allred, Smith and Wiley, and the Fifth Claim for Relief as to

Defendants Jordan and Wiley.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir.

1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite

the lack of an objection does not preclude application of the "firm waiver rule"); *International*

*Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th

Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant

had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d

1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to

appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

    DATED this 25th day of February, 2010.

                       BY THE COURT:


                       __s/ Craig B. Shaffer_____
                       United States Magistrate Judge